# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KENNETH BYNDOM,

                Plaintiff,

v.                                CASE NO. 6:23-cv-1971-JA-LHP

WAFFLE HOUSE, INC., and
EAST COAST WAFFLES, INC.,

                Defendants.

_____

## ORDER

This case is before the Court on Defendants' motion for summary judgment (Doc. 36), Plaintiff's response (Doc. 45), and Defendants' reply (Doc. 49). Based on the Court's review of the parties' submissions, the motion must be granted.

## I.    BACKGROUND

Defendant Waffle House, Inc. owns the Waffle House restaurant chain and is the parent company of Defendant East Coast Waffles, Inc., which operates Waffle House locations in Florida. (Doc. 37-6 at 12:17–13:9). In the early morning hours of July 30, 2022, Plaintiff, Kenneth Byndom, visited Defendants' Kissimmee, Florida Waffle House location with his girlfriend and her friends after attending a party at a nearby resort. (Doc. 37-1 at 44:11–

46:22).    The entirety of Plaintiff's visit was captured on video by four of Defendants' security cameras, but without audio.  (Doc. 40).[1]  Three Waffle House employees were on duty at the time, including Kevin Edwards and his supervisor, Chynna Nembhard.  (Doc. 37-3 at 92:2–5).  During Plaintiff's visit, Mr. Edwards and Ms. Nembhard were wearing cloth face masks, making it hard to tell when they were speaking to Plaintiff, who was not wearing a mask.  (*See generally* Doc. 40).

Plaintiff and his party entered the restaurant and sat down at the counter at approximately 4:53 a.m.  (Doc. 37-1 at 52:14–22, 54:21–55:1; Doc. 40).  The video shows Plaintiff partially seated on a stool speaking to Mr. Edwards, who was stationed to Plaintiff's right at the cash register on the other side of the counter.  (Doc. 40 at 4:53:09–4:56:43).  In their depositions, Mr. Edwards and Ms. Nembhard testified that Plaintiff was complaining that he was denied service at another Waffle House location.  (Doc. 37-2 at 40:16–24; Doc. 37-3 at 69:14–18).  Mr. Edwards and Ms. Nembhard attempted to assure Plaintiff that they would serve him, but Plaintiff continued to "bark[] at everyone on staff" and focused his aggression on Mr. Edwards.  (Doc. 37-2 at 41:4–15).

After a few minutes, Plaintiff rose to confront Mr. Edwards face to face

---

[1] Defendants provided the Court with a CD containing the video of the incident, which was filed under seal and designated on the docket at Doc. 40.

over the cash register. (Doc. 40 at 4:56:30). Plaintiff made several emphatic hand gestures toward Mr. Edwards as an argument ensued. (*Id.* at 4:56:31–4:57:32). Ms. Nembhard testified that Plaintiff called Mr. Edwards "a little bitch ass nigger" and threatened to beat him. (Doc. 37-2 at 54:7–14). According to Ms. Nembhard, Mr. Edwards maintained a professional tone but some of Plaintiff's comments caused Mr. Edwards to laugh, further infuriating Plaintiff. (*Id.* at 55:3–20). Ms. Nembhard then intervened by ordering Mr. Edwards to step outside. (Doc. 37-2 at 40:14–20; Doc. 37-3 at 68:21–25; Doc. 40 at 4:57:56).

After being ordered to leave the restaurant, Mr. Edwards walked toward the employee break room located at the other end of the counter to retrieve his backpack. (Doc. 40 at 4:58:00). Plaintiff began following Mr. Edwards in that direction from the customer side of the counter. (*Id.* at 4:58:04–4:58:12). Once Mr. Edwards disappeared into the break room, Plaintiff paced around the customer area before returning to his original position at the center of the counter to confront the other Waffle House employees. (*Id.* at 4:58:04–4:58:35). After a few moments, Mr. Edwards emerged from the break room and exited through the front door, which was located behind where Plaintiff was standing at the counter. (*Id.* at 4:58:30). Plaintiff began following Mr. Edwards toward the front door but then returned to the counter to continue arguing with the other employees after Mr. Edwards exited. (*Id.* at 4:58:37).

3

Mr. Edwards re-entered the restaurant a few seconds later to retrieve his cell phone, which he had left behind the counter. (Doc. 37-3 at 68:25–69:20; Doc. 40 at 4:58:30–4:58:45). Mr. Edwards headed for the same front door exit again, but Plaintiff moved to confront him. (Doc. 40 at 4:58:57). Mr. Edwards attempted to walk past Plaintiff toward the front door, but Plaintiff positioned himself so that he would be standing directly behind Mr. Edwards if Mr. Edwards continued toward the door. (*Id.* at 4:59:10). Mr. Edwards then turned to face Plaintiff. (*Id.*). In his deposition, Mr. Edwards testified that Plaintiff threatened to kill him and hide his body and told him that due to his small stature Mr. Edwards would not be able to defend himself. (Doc. 37-3 at 75:4–15). A few seconds later, Mr. Edwards stabbed Plaintiff in the face with a waffle pick—a tool similar to an ice pick that is used to clean the edges of waffle irons. (*Id.* at 4:59:10–4:59:14; Doc. 37-6 at 38:9–13). Police arrived moments later, and Mr. Edwards was arrested and taken to jail. (Doc. 37-3 at 82:16–83:2). Mr. Edwards told responding officers with the Osceola County Sheriff's Office that he "felt his life was in danger" at the time of the stabbing. (Doc. 37-5). Plaintiff was also arrested for his involvement in the altercation. (Doc. 37-1 at 65:12–16, 67:3–8).

Prior to the incident, Mr. Edwards had been arrested on two occasions, both of which predated his employment at Waffle House. (Doc. 37-3 at 55:9–17).

4

He was first arrested in 2019 as a high school student for bringing a firearm and marijuana onto campus and shoving an investigating law enforcement officer. (*Id.* at 60:19–24, 83:9–11, 124:18–125:11; Doc. 49-1 at 2). Mr. Edwards was not convicted but was instead put into a diversion program and placed on probation. (Doc. 37-6 at 56:1–11; Doc. 37-3 at 57:8–24; Doc. 49-2). He was still on probation at the time he was hired at Waffle House and at the time of the incident. (Doc. 37-3 at 57:8–24). Mr. Edwards was also arrested in 2020 before he began working for Waffle House for driving under the influence, a misdemeanor. (*Id.* at 58:11–16). He was convicted for the DUI arrest and served one month in jail for violating his probation. (*Id.* at 59:12–16).

Mr. Edwards worked two other jobs in the food service industry before beginning his employment with Waffle House in 2021. (*Id.* at 16:9–23, 17:3–22). Waffle House hired Mr. Edwards after he was recommended for a position by his mother, who was in a leadership role at Waffle House. (Doc. 37-6 at 53:3–17). At the time he was hired at Waffle House, Plaintiff did not disclose his 2019 arrest because he had not been adjudicated guilty. (Doc. 37-3 at 87:4–11; Doc. 37-6 at 54:19–55:3). However, the Waffle House unit manager, Natalie Martinez, was aware of the 2019 incident when she interviewed Mr. Edwards and knew he was on probation. (Doc. 37-6 at 62:9–19). Prior to the incident, Mr. Edwards had no history of disciplinary issues as a Waffle House employee.

(Doc. 37-6 at 40:14–17). As of his deposition on January 3, 2025, Mr. Edwards still works for Waffle House. (Doc. 37-3 at 2–4).

After the stabbing, Plaintiff was transported to a hospital and treated for injuries to his eye and ear. (Doc. 37-1 at 66:18–67:2). Plaintiff now receives ongoing treatment for nerve damage to his left eye. (*Id.* at 33:12–13, 114:25–115:9). In his deposition, Plaintiff testified that he does not remember most of what happened at the restaurant before he was stabbed. (*Id.* at 40:15–23, 53:10–54:20, 58:21–59:18, 60:6–61:3). Plaintiff seeks to hold Defendants responsible for his injuries on theories of negligence (Counts I & V); vicarious liability (Counts II & VI); negligent hiring (Counts III & VII); and negligent retention, training, and supervision (Counts IV & VIII). (Doc. 19). Defendants now request summary judgment on all counts. (Doc. 36).

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, a district court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1152 (11th Cir. 2000). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that 'it believes demonstrate the absence of a genuine issue of material fact.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he burden then shifts to the non[]moving party" to "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.   DISCUSSION

### A.   Defendants' Affirmative Defense Based on § 776.085, Fla. Stat.

Defendants argue that Plaintiff is barred from recovery on all of his claims pursuant to section 776.085, Florida Statutes, because he was engaged in a forcible felony at the time of the incident. This section provides that damages for personal injuries "sustained by a participant during the commission or attempted commission of a forcible felony" are not recoverable. § 776.085, Fla. Stat. The definition of a "forcible felony" includes aggravated assault,

aggravated battery, and "any other felony which involves the use or threat of physical force or violence against any individual." § 776.08, Fla. Stat; *see also Whittier v. City of Sunrise*, 395 F. App'x 648, 651 (11th Cir. 2010).[2]

Defendants first posit that Plaintiff committed an assault under section 784.011, Florida Statutes  However, assault under section 784.011 is classified as a second–degree misdemeanor. *See* § 784.011(2), Fla. Stat.  Thus, an alleged assault under section 784.011 is not a proper basis to bar recovery under section 776.085.  *See State v. Hearns*, 961 So. 2d 211, 219 (Fla. 2007) (finding that a "misdemeanor offense . . . can never be a forcible felony").

Defendants also claim that Plaintiff committed an aggravated assault under section 784.021, Florida Statutes.  Aggravated assault—a felony—is defined as an assault "[w]ith a deadly weapon without intent to kill" or an assault "[w]ith an intent to commit a felony." § 784.021(1), Fla. Stat.  But Defendants have not presented record evidence establishing that Plaintiff's conduct amounted to an aggravated assault.  And Defendants do not point to any other felony that could apply to bar recovery under section 776.085. Therefore, Defendants are not entitled to summary judgment on this basis. *See also Suarez v. City of Hollywood*, No. 16-62215-CIV, 2018 WL 11351534, at *5

---

[2] In the Eleventh Circuit, "unpublished decisions . . . bind no one," *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016), but "may be cited as persuasive authority," 11th Cir. R. 36-2.

(S.D. Fla. Nov. 17, 2018) (declining to grant summary judgment based on section 776.085 because questions of fact remained as to whether the plaintiff possessed the requisite mental state to commit a forcible felony).

## B. Premises Liability[3]

In Counts I and V, Plaintiff alleges that Defendants failed to "maintain the premises . . . in a condition reasonably safe for use by its invitees and the public." (Doc. 19 ¶¶ 13, 28). Under Florida law, "[t]o sustain a premises liability action based on a landowner's negligence, a plaintiff must prove the standard elements of a negligence claim: duty, breach of duty, proximate causation, and damages—with the added element that the landowner had possession or control of the premises when the alleged injury occurred." *Conner v. Marriott Hotel Servs., Inc.*, 559 F. Supp. 3d 1305, 1308 (M.D. Fla. 2021) (citing *Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001)).[4]

Whether a duty exists is a question of law. *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009). "Where a defendant's conduct creates a foreseeable zone of

---

[3] Counts I and V are labeled "negligence" but combine concepts of premises liability and negligent hiring, retention, training, and supervision. The premises liability claims are addressed here, and Plaintiff's remaining claims are addressed in other sections of this order.

[4] "A federal court applying state law is bound to adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).

risk, the law generally will recognize a duty placed upon [the] defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989) (citing *Stevens v. Jefferson*, 436 So. 2d 33, 35 (Fla. 1983)).   "[A]s the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).  But these duties do not make the landowner "an insurer of the safety of persons on the property." *Haynes v. Lloyd*, 533 So. 2d 944, 946 (Fla. 5th DCA 1988).  Indeed, the zone of risk "must have been reasonably foreseeable, not just possible" to give rise to a duty.  *Graham v. Langley*, 683 So. 2d 1147, 1148 (Fla. 5th DCA 1996).

A landowner is under a duty to invitees to maintain the premises in a reasonably safe condition and warn of dangers. *See Rocamonde v. Marshalls of Ma, Inc.*, 56 So. 3d 863, 865 (Fla. 3d DCA 2011).  This includes the duty to "protect customers from criminal attacks that are reasonably foreseeable." *Walker v. Feltman*, 111 So. 2d 76, 78 (Fla. 3d DCA 1959); *Banosmoreno v. Walgreen Co.*, 299 F. App'x 912, 913 (11th Cir. 2008).   To establish that a criminal attack was reasonably foreseeable, a plaintiff must show that the proprietor "knew or should have known of a dangerous condition on [the] premises that was likely to cause harm to a patron." *Stevens*, 436 So. 2d at 34;

10

*Graham v. Great Atl. & Pac. Tea Co.*, 240 So. 2d 157, 158 (Fla. 4th DCA 1970). "Evidence relevant to foreseeability includes the general likelihood of harm to the invitee, criminal activity in the vicinity, and security measures taken by the owner of the premises." *Meyers v. Ramada Hotel Operating Co.*, 833 F.2d 1521, 1523 (11th Cir. 1987).

In arguing that a dispute of fact exists as to the reasonable foreseeability of the incident, Plaintiff cites a portion of Ms. Nembhard's deposition testimony where she stated that Defendants' employees have previously called the police over customer-involved altercations. (Doc. 37-2 at 13:15–14:9). But evidence that the police have previously been called to a store in unrelated incidents is not sufficient to create a genuine dispute of fact as to the reasonable foreseeability of a "targeted, personal assault" that occurs on the property. *Banosmoreno*, 299 F. App'x at 914. Ms. Nembhard also testified that she was unaware of any prior occasion where an employee physically attacked a customer or of any issues involving Mr. Edwards. (*Id.* at 13:4–14). *See also Paterson v. Deeb*, 472 So. 2d 1210, 1214–15 (Fla. 1st DCA 1985) (finding that a "landowner should not be required to take precautions against a sudden attack which the landowner has no reason to anticipate.").

Plaintiff also contends that Defendants were under a heightened duty to prevent the attack because Defendants enlarged the foreseeable zone of risk by:

(1) sending Mr. Edwards outside, in violation of store policy, where he would have to walk past Plaintiff; and (2) attempting to de-escalate the situation prior to calling the police. The Court is not persuaded that this conduct enlarged the foreseeable zone of risk in this case, and Plaintiff provides no authority to the contrary. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (rejecting a "conclusory argument" because the party advancing it "d[id] not explain [its] legal basis" or cite "legal authority to support it"). Moreover, Florida courts have held that "an internal rule is in no way controlling in a court's analysis of whether a legal duty exists." *Johnson v. Wal-Mart Stores E., LP*, 389 So. 3d 705, 712 (Fla. 5th DCA 2024); *Dominguez v. Publix Super Mkts., Inc.*, 187 So. 3d 892, 895 (Fla. 3d DCA 2016). Therefore, these arguments must be rejected.

### C.    Vicarious Liability

In Counts II and VI, Plaintiff brings claims for vicarious liability against Defendants. On a vicarious liability claim, the issue is "whether the employee committed the alleged negligent act: (1) within the scope of employment, or (2) during the course of employment and to further a purpose or interest of the employer." *Valeo v. E. Coast Furniture Co.*, 95 So. 3d 921, 925 (Fla. 4th DCA 2012); *see also Aurbach v. Gallina*, 753 So. 2d 60, 62 (Fla. 2000). The "general rule is that an employer cannot be held liable for the tortious or criminal acts of

12

an employee, unless they were committed during the course of the employment." *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985). Typically, "batteries by employees are held to be outside the scope of an employee's employment." *Id.* Here, summary judgment must be granted on Plaintiff's vicarious liability claims because this case concerns a battery committed by Defendants' employee outside the scope of his employment. *See also Weiss v. Jacobson,* 62 So. 2d 904, 906 (Fla. 1953).

### D.    Negligent Employment Practices

In Counts III, IV, VII, and VIII, Plaintiff alleges negligent hiring, retention, training, and supervision against Defendants. Claims based on negligent hiring, retention, training, and supervision allow recovery against an employer for "acts which are not within the course and scope of employment." *Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989) (emphasis removed); *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. 2d DCA 1986). These claims are addressed in turn.

#### 1.    *Negligent Hiring*

Under Florida law, "[n]egligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness." *Garcia*, 492 So. 2d at 438. For a negligent hiring claim, liability primarily hinges on the "adequacy of the employer's pre-employment investigation into the employee's background." *Id.* (citing *Williams v.*

13

*Feathersound, Inc.*, 386 So. 2d 1238 (Fla. 2d DCA 1980)).  To establish liability

for negligent hiring, a plaintiff must show that:

> (1) the employer was required to make an appropriate
> investigation of the employee and failed to do so; (2) an
> appropriate investigation would have revealed the
> unsuitability of the employee for the particular duty to
> be performed or for employment in general; and (3) it
> was unreasonable for the employer to hire the employee
> in light of the information he knew or should have
> known.

*Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) (quoting *Garcia*, 492 So. 2d at

438). "[T]he inquiry is focused on whether the specific danger that ultimately

manifested itself . . . reasonably could have been foreseen at the time of hiring."

*Id.*  "In general, the test is whether the employer exercised the level of care

which, under all the circumstances, the reasonably prudent man would exercise

in choosing or retaining an employee for the particular duties to be performed."

*Garcia*, 492 So. 2d at 440.

Defendants argue that there is no genuine issue of material fact that

precludes summary judgment on the negligent hiring claim.  *See Lobegeiger v.*

*Celebrity Cruises, Inc.*, 869 F. Supp. 2d 1356, 1365 (S.D. Fla. 2012).  Defendants

rely on the deposition testimony of Waffle House corporate representative John

Fervier in which he states: (1) Waffle House rejects job applicants who have

been convicted of serious offenses, (Doc. 37-6 at 49:13–50:14); (2) Waffle House

does not generally inquire about arrests that did not lead to convictions, (*id.* at

14

51:21–52:6, 54:22–55:3); (3) Mr. Edwards was not convicted at the time of his application and had instead been placed in a diversion program, (*id.* at 56:16–19); (4) Waffle House management was aware of Mr. Edwards's 2019 arrest and probation status and believed that multiple mitigating circumstances existed, (*id.* at 78:18–79:10, 80:3–4); and (5) Waffle House considers character references when hiring employees, and Mr. Edwards was recommended for the position by his mother, a Waffle House supervisor, (*id.* at 70:1–12). Plaintiff responds that Defendants engaged in negligent hiring because Defendants (1) did not perform a background check on Mr. Edwards despite having his consent to do so; (2) had actual knowledge of Mr. Edwards's prior arrest and probation status but chose to hire him anyway; and (3) engaged in "nepotistic hiring" by taking the recommendation of Mr. Edwards's mother, a Waffle House supervisor. (*See* Doc. 37-6 at 64:14, 80:3–4; Doc. 45 at 17).

### a. Background Check

First, Plaintiff asserts that Defendants were negligent for failing to conduct a background check on Mr. Edwards at the time of hiring. In Florida, when "analyzing the employer's responsibility to check out an applicant's background, it is necessary to consider the type of work to be done by the prospective employee." *Williams,* 386 at 1238. Plaintiff has not pointed to any authority suggesting that Defendants were obligated to conduct a background

check on Mr. Edwards based on the nature of his work for Waffle House. And "there is no requirement, as a matter of law, that the employer make an inquiry with law enforcement agencies about an employee's possible criminal record, even where the employee is to regularly deal with the public." *Garcia*, 492 So. 2d at 441. Plaintiff also does not argue that a background check would have revealed pertinent information that Defendants did not already know. Thus, this argument misses the mark.

### b.    Knowledge of Arrest

Next, Plaintiff contends Defendants engaged in negligent hiring because they had actual knowledge of Mr. Edwards's prior arrest at the time of hiring. However, "[a]ctual knowledge of an employee's criminal record does not establish, as a matter of law, the employer's negligence in hiring him." *Id.* "To say an employer can never hire a person with a criminal record at the risk of being held liable for the employee's tortious assault, 'flies in the face of the premise that society must make a reasonable effort to rehabilitate those who have gone astray.'" *Garcia*, 492 So. 2d at 441 (quoting *Williams*, 368 So. 2d at 1241).

Plaintiff has not cited any authority supporting a conclusion that it was unreasonable to hire someone with Mr. Edwards's arrest history to work at Waffle House. *See Muegge v. Heritage Oaks Golf & Country Club, Inc.*, No. 8:05-

16

cv-354-T, 2006 WL 1037096, at *7 (M.D. Fla. Apr. 19, 2006). Plaintiff cannot show that "the specific danger that ultimately manifested itself . . . reasonably could have been foreseen at the time of hiring." *Malicki*, 814 So. 2d at 362. The connection between, on the one hand, Mr. Edwards's 2019 high school arrest for taking a gun and marijuana onto campus and shoving an investigating law enforcement officer and, on the other hand, the incident in this case, is attenuated at best. *See Garcia*, 492 So. 2d at 442; *Island City Flying Serv. v. Gen. Elec. Credit Corp.*, 585 So. 2d 274, 277 (Fla. 1991) (requiring a connection and foreseeability between the prior offense and the current offense for an employer to be found liable for negligent hiring).

### c.    Nepotistic Hiring

Lastly, the Court finds Plaintiff's assertion that Defendants engaged in "nepotistic" hiring to be conclusory as well as irrelevant to the Court's inquiry regarding Defendants' alleged negligent employment practices. The mere fact of Defendants' allegedly nepotistic hiring practices, without more, cannot form the basis of a negligent hiring claim. *See Markovich*, 95 F.4th at 1379. Therefore, summary judgment is appropriate on this claim.

### 2.    *Negligent Supervision and Negligent Retention*

"The terms negligent supervision and negligent retention are essentially interchangeable." *Yule v. Ocean Reef Cmty. Ass'n*, No. 19-10138-CIV, 2020 WL 3051505, at *9 n.7 (S.D. Fla. June 8, 2020) (citing *Watts v. City of Hollywood*,

146 F. Supp. 3d 1254, 1262 n.4 (S.D. Fla. 2015)).   Negligent retention and negligent supervision occur "when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicate his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment." *Howard v. Wilkinson*, 380 F. Supp. 3d 1263, 1288 (M.D. Fla. 2019) (quoting *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1378 (S.D. Fla. 2013)); *see also Slonin v. City of West Palm Beach*, 896 So. 2d 882, 884 (Fla. 4th DCA 2005).   "The principal difference between negligent hiring and negligent retention as bases for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness." *Garcia*, 492 So. 2d at 438.

Plaintiff has not presented evidence to overcome summary judgment on these claims.   Mr. Edwards's co-workers testified that they were unaware of any problems with Mr. Edwards during his employment, and Mr. Fervier confirmed that Mr. Edwards had a "clean record" as a Waffle House employee.   (Doc. 37-2 at 13:2–14, 40:12–15; Doc. 37-4 at 63:22–24; Doc. 37-6 at 40:14–17).   Plaintiff points to no evidence to the contrary.   Without evidence that there were problems with Mr. Edwards as an employee prior to the incident, the negligent retention and supervision claims fail.   *See Garcia*, 492 So. 2d at 439.

3.    *Negligent Training*

"Under Florida law, an employer may be liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Harrison v. Red Bull Distrib. Co.,* No. 2:19-cv-17, 2019 WL 1117022, at *2 (M.D. Fla. Mar. 11, 2019) (citing *McFarland & Son, Inc. v. Basel,* 727 So. 2d 266 (Fla. 5th DCA 1999)). "Negligent training occurs when an employer was negligent in the implementation or operation of the training program." *Id.* (quoting *Gutman v. Quest Diagnostics Clinical Lab'ys, Inc.,* 707 F. Supp. 2d 1327, 1332 (S.D. Fla. 2010)).

Plaintiff alleges that Defendants negligently trained their employees because Defendants did not have a policy prohibiting employees from carrying waffle picks on their person. (Doc. 45 at 18). The record shows that Defendants' employees were given orientation, initial in-restaurant training, employee manuals, on-the-job training, and in-store signs and instructions. (Doc. 37-6 at 96:21–100:11, 103:5–104:13, 105:20–107:2). Moreover, Defendants' employees were taught de-escalation tactics, which they attempted to implement at the time of the incident. (Doc. 37-2 at 74:18–79:8; Doc. 37-6 at 127:14–19). And there had never been a prior similar incident on the property that could give notice of a need for a policy regarding waffle picks. (*See, e.g.,* Doc. 37-4 at 63:18–24; Doc. 37-6 at 40:14–17). Plaintiff has failed to identify any evidence that the

19

incident was based on some failure on the part of Defendants to train their employees. *See also Fogle v. IBM Corp.*, No. 8:19-cv-2896-T, 2020 WL 4260988, at *6 (M.D. Fla. July 24, 2020).[5]

## IV.    CONCLUSION

For the reasons given above, it is **ORDERED** that Defendants' motion for summary judgment (Doc. 36) is **GRANTED** on all of Plaintiff's claims.  The Clerk is directed to enter a judgment providing that Plaintiff takes nothing from Defendants on any of his claims in this case.  All other pending motions are **DENIED** as moot.  The Clerk shall then close this case.

**DONE** and **ORDERED** in Orlando, Florida, on March 31st, 2025.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

---

[5] Having found that summary judgment must be granted for the reasons explained herein, the Court need not address Defendants' remaining arguments.